UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-81308-CIV-MIDDLEBROOKS/BRANNON

SMS AUDIO, LLC, and G-UNIT
BRANDS, INC.,

    Plaintiffs,

v.

JONATHAN S. BELSON, and
ERIC S. HAMMOND,

    Defendants.
_____/

## ORDER ON PLAINTIFFS' MOTIONS *IN LIMINE*

THIS CAUSE comes before the Court on Plaintiffs SMS Audio, LLC ("SMS") and G-Unit Brands, Inc.'s (collectively, "Plaintiffs") Motions *in Limine*, filed on January 13, 2017. Plaintiffs filed a Motion *In Limine* to exclude at trial evidence of various litigation, arbitration, and other incidents involving SMS's majority shareholder and manager, Curtis Jackson, also known as 50-Cent ("Jackson"). (DE 112). Plaintiffs also filed a Motion *In Limine* to exclude various website printouts that Defendants Jonathan S. Belson and Eric S. Hammond ("Defendants") introduced at the August 11, 2016 preliminary injunction hearing. (DE 113). Defendants filed their Responses on February 3, 2017 (DE 124; DE 125), to which Plaintiffs replied on February 10, 2017 (DE 129; DE 130). For reasons stated below, Plaintiffs' Motions *In Limine* are denied without prejudice to a proper trial objection.

### A. Standard

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 (1984). However, motions *in limine* are

disfavored because, unlike objections at trial, they present hypothetical – not actual – circumstances. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1504 (11th Cir. 1985) (citation omitted). Accordingly, district courts generally grant a motion *in limine* to exclude evidence "only if the evidence is clearly inadmissible for any purpose." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007); *see also, e.g., Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 14-20654-CIV, 2015 WL 11216748, at *1 (S.D. Fla. Oct. 27, 2015).

## B. Outside Incidents

Plaintiffs move to exclude evidence of the following prior litigation, arbitration, and other incidents: (1) litigation in *Sleek Audio, LLC v. Curtis J. Jackson, III*, Case No. 9:13-cv-80725 (S.D. Fla. July 26, 2016) and related arbitration proceedings regarding a trade dress dispute over two of SMS's headphone products that resulted in a payment of $18 million by Jackson; (2) litigation in *Leviston v. Jackson*, Case No. 102449-2010 (N.Y. Sup. Ct.) that resulted in a payment of $7 million by Jackson for posting a sex tape; (3) Jackson's pending bankruptcy proceedings in *In re: Curtis James Jackson, III*, 2:15-bk-21233 (Bankr. D. Conn.), commenced in 2015, and related litigation between Jackson and his formal counsel and William Leonard Roberts, II; (4) an incident on May 1, 2016, in which Jackson mocked an autistic 19-year-old on social media; and (5) public incidents involving Jackson and Roberts' ongoing feud from 2009 to the present (collectively, the "Outside Incidents"). Plaintiffs argue that the Outside Incidents are irrelevant and unfairly prejudicial.

2

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. One exception to the admissibility of relevant evidence is Rule 403, which permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Because [] rule [403] permits the exclusion of relevant evidence only when its probative value is substantially outweighed by the potential for undue harm, the rule favors admissibility of relevant evidence and should be invoked very sparingly to bar its admission." *Hendrix*, 776 F.2d at 1502 (citation omitted). "'Unfair prejudice' sufficient to warrant exclusion of relevant evidence must at a minimum have an 'undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (citing Fed. R. Evid. 403 advisory committee note).

Plaintiffs argue that the Outside Incidents are irrelevant because they do not involve the Parties or any events occurring between May and July 2016, which is when Defendants' alleged theft of trade secrets and confidential information, interference with business relationships, conversion, and other similar wrongful acts occurred. Defendants respond that the Outside Incidents are relevant, based on their potential impact on SMS's financials, to explain why SMS was liquidating its inventory and to offer an alternative cause for SMS's damages. Because Jackson is the majority shareholder and manager of SMS, and allegedly its "public face," the Outside Incidents, which involve Jackson's judgments, pending bankruptcy, and certain public

3

incidents, may be relevant to damages. While Plaintiffs argue that the Outside Incidents did not affect the KidzSafe brand because it was not tied to Jackson's image, the impact of the Outside Incidents on the KidzSafe brand is a factual issue for the jury. Accordingly, the Outside Incidents may be relevant to telling the story of SMS's inventory liquidation and to the issue of damages.

Plaintiffs argue that even assuming relevance, any probative value is substantially outweighed by the danger of confusion and unfair prejudice. Plaintiffs argue that introducing outside litigation, especially pending litigation, could confuse the jury as to what facts they need to decide in this litigation. They also argue that the jury could unfairly attribute any negative aspects of Jackson's prior dealings to SMS. Without knowing more details of the Outside Incidents and what Defendants may seek to introduce, I cannot find that Plaintiffs have shown jury confusion or unfair prejudice substantially outweighs possible relevance. I deny Plaintiffs' Motion *In Limine* to exclude the Outside Incidents without prejudice, and subject to objection at trial.

### C. Website Printouts

Plaintiffs move to exclude the following website printouts that Defendants introduced during the August 11, 2016 preliminary injunction hearing: (1) online articles, posted on dealerscope.com, listing the top 101 consumer electronics retailers in 2015 and 2016, and profiling various consumer electronics distributors; (2) pages from the websites of various headphones' producers, listing their authorized retailers and distributors; (3) a page from the website of www.kidzsafeaudio.com, listing its retailers; and (4) a printout of the search results on

4

Amazon for "safe earphones for kids" (collectively, the "Website Printouts"). Plaintiffs argue the Website Printouts are irrelevant, will cause jury confusion, cannot be authenticated by any of the Parties' witnesses, and are hearsay.

### i. Relevance

Without knowing what theories Defendants will pursue at trial, I cannot determine that the Website Printouts are irrelevant. Plaintiffs accuse Defendants of taking SMS's list of retailers and distributors in violation of the Defend Trade Secrets Act ("DTSA"), the Florida Uniform Trade Secrets Act ("FUTSA"), and Defendants' Non-Disclosure Agreements. Under both the DTSA and FUTSA, "[i]nformation that is generally known or readily accessible to third parties cannot qualify for trade secret protection." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (citing *Bestechnologies, Inc. v. Trident Envtl. Sys., Inc.*, 681 So. 2d 1175, 1176 (Fla. 2d DCA 1996)); *see* 18 U.S.C. § 1839(3). The Non-Disclosure Agreements at issue also exclude from protection information that is generally known. Accordingly, the Website Printouts may be relevant to whether Defendants took confidential and trade secret information.

### ii. Jury Confusion

Plaintiffs argue that any probative value of the Website Printouts is substantially outweighed by the danger of jury confusion as to the differences between Plaintiffs' business practices and the practices of others in the industry. Plaintiffs' argument seems to be more focused on the relevance of competitors' business practices, and it is unclear why the jury would be unable to distinguish between different companies' business practices. Accordingly,

5

Plaintiffs have not shown that the risk of jury confusion substantially outweighs the potential relevance of the Website Printouts.

### iii. Authentication

Plaintiffs argue that Defendants have failed to identify a witness who can authenticate the Website Printouts.[1] Plaintiffs contend that only an expert witness, Internet consultant, or witness with personal knowledge of a website can establish the accuracy and source of a website. Defendants respond that the person who searched for and printed the Website Printouts can authenticate that they reflect the information available on the Internet on a particular date.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. "Authentication or identification under rule 901 merely involves the process of presenting sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be." *United States v. Caldwell,* 776 F.2d 989, 1001-02 (11th Cir.1985). "Once that *prima facie* showing has been made, the evidence should be admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be." *Id.*

A witness with knowledge may authenticate evidence by "[t]estimony that the item is what it is claimed to be." Fed. R. Evid. 901(b)(1). "[A] document also may be authenticated by circumstantial evidence." *Caldwell,* 776 F.2d at 1002; *see* Fed. R. Evid. 901(b)(4) (permitting authentication by "[a]ppearance, contents, substance, internal patterns, or other distinctive

---

[1] Plaintiffs argue, and Defendants do not contest, that websites are not among the categories of documents that may be self-authenticated under Fed. R. Evid. 902.

characteristics, taken in conjunction with circumstances."). Courts have recognized both methods "as a means to authenticate [electronically stored information], including e-mail, text messages and the content of websites," and have even used them in combination. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 546 (D. Md. 2007) (citing *United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000); *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006); *In re F.P.*, 878 A.2d 91, 94 (Pa. Super. Ct. 2005); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1153-54 (C.D. Cal. 2002)).

The type of testimony or circumstantial evidence necessary to authenticate evidence depends on the purpose for which the evidence is introduced. *See* Fed. R. Evid. 901 ("[T]he proponent must produce evidence sufficient to support a finding that the item is *what the proponent claims it is*.") (emphasis added). Accordingly, courts generally permit the authentication of web postings, bearing a web address and the date printed, by a witness who saw and printed the postings "for the limited purpose of proving that the postings had appeared on the world wide web on the days that [the witness] personally saw the postings and printed them off the computer."[2] *Saadi v. Maroun*, No. 8:07-CV-1976-T-24 MA, 2009 WL 3736121, at *4 (M.D. Fla. Nov. 4, 2009) (permitting, in defamation case, witness who printed derogatory statements off of the Internet to authenticate them for the narrow purpose of proving they appeared on the Internet, but not to prove the author or source of the postings); *Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2012 WL 3235108, at *7 (E.D. Pa. Aug. 8, 2012), *aff'd sub nom. Knit With*

---

[2] Although the Eleventh Circuit has addressed the authentication of emails through circumstantial evidence, *see Siddiqui*, 235 F.3d at 1322-23, I am unaware of any Eleventh Circuit case outlining the requirements for authenticating a printout from a website run by a third party.

7

*v. Knitting Fever, Inc.*, 625 F. App'x 27 (3d Cir. 2015) (permitting witness who printed blog entries of derogatory comments to authenticate them for the purpose of showing reputational damage); *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, No. SACV06-0827 AGRNBX, 2008 WL 1913163, at *6 (C.D. Cal. Mar. 27, 2008), *aff'd,* 327 F. App'x 723 (9th Cir. 2009) (permitting testimony of witness who conducted Lexis search to authenticate a printout of the search results, which bore the web address and date printed, for the purpose of showing generic use in trademark case).

Courts diverge on whether a website's owner, webmaster, or author is necessary to authenticate a web posting when its relevancy depends on its accuracy or its author. *Compare United States v. Jackson,* 208 F.3d 633, 638 (7th Cir. 2000) (excluding evidence of website postings to prove statements made by organization because proponent failed to show that organization actually posted the statements, as opposed to a third party), *with United States v. Tank,* 200 F.3d 627, 630 (9th Cir. 2000) (holding that witness's testimony that he printed out a chatroom's logs and that the logs accurately represented the chatroom conversations authenticated chatroom logs, and the question of the logs' completeness was an issue for the jury). Multiple courts have permitted authentication of a web posting's source and accuracy by testimony of the witness who printed it, combined with circumstantial indicia of authenticity, such as the posting's web address. *See Perfect 10, Inc.*, 213 F. Supp. 2d at 1154; *United States v. Standring*, No. 1:04CV730, 2006 WL 689116, at *3 (S.D. Ohio 2006) (permitting authentication of website printout, to show defendant offered illegal services, by testimony of agent who found website, in combination with circumstantial evidence in the form of time-stamps and the web

address); *Estate of Konell v. Allied Prop. & Cas. Ins. Co.*, No. 3:10-CV-955-ST, 2014 WL 11072219, at *1 (D. Or. Jan. 28, 2014) (noting that "testimony of others who saw the posting on the website, continuation of the posting on the website so that it is available to be seen by the court, or evidence that the party to whom the posting is attributed made similar postings or published the same information elsewhere" is the type of evidence that could authenticate source and accuracy of website).

Because Defendants argue that they will offer the Website Printouts, which contain web addresses and the dates they were printed, solely to show the information that was generally available on the Internet on a particular date, they have made an argument that they can authenticate the Website Printouts with their current witnesses.[3] Indeed, Plaintiffs acknowledge that the person who searched online for the Website Printouts "may be able to testify that the Website Printout is a picture of what was portrayed on the website at the time it was printed." (DE 129 at 4). Accordingly, Plaintiffs have not shown that no witness is capable of authenticating the Website Printouts.

    iv. **Hearsay**

Plaintiffs argue that the Website Printouts are hearsay because they are offered to prove "Plaintiffs' competitors openly advertise their distributors and retailers to the public." (DE 113 at 7). Defendants argue that the Website Printouts are offered to prove the information available on the Internet on the date the postings were printed.

---

[3] I will address other authentication arguments as they arise at trial.

9

Hearsay, absent an exception, is inadmissible. Fed. R. Evid. 802. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee note. Accordingly, a webpage, introduced for the purpose of showing the information available on the Internet on a particular day, is not hearsay. *See e.g., Lorraine*, 241 F.R.D. at 566 (collecting cases); *United States v. Standring*, No. 1:04CV730, 2006 WL 689116 (S.D. Ohio 2006) (holding exhibits of third-party website were admissible for non-hearsay purpose of showing services available on that website). Alternatively, multiple courts have held that a website's images and text are not "statements," to the extent they are being introduced to show the images and texts available on the website, and for that reason are not hearsay. *See Perfect 10*, 213 F. Supp. 2d at 1155 (finding that images and text taken from website of defendant to show trademark infringement are not "statements" under the hearsay rule, "to the extent these images and text are being introduced to show the images and text found on the websites, they are not statements at all – and thus fall outside the ambit of the hearsay rule."); *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 WL 2367740, at *1 (N.D. Ill. Oct. 15, 2004) (holding that exhibit from website offered to show that party advertised itself as a DISH Network provider after contract expired was not a "statement").

To the extent Defendants seek to introduce the Website Printouts to show the information generally available on the Internet on a particular day, the Website Printouts are not hearsay. If

Defendants seek to introduce the Website Printouts for another purpose at trial, Plaintiffs may renew their objections, which I will address at that time. Accordingly, I deny without prejudice, and subject to objection at trial, Plaintiffs' Motion *In Limine* to exclude the Website Printouts. It is hereby

    **ORDERED AND ADJUDGED** that

    (1) Plaintiffs' Motion *in Limine* to exclude the Outside Incidents (DE 112) is **DENIED without prejudice and subject to objection at trial.**

    (2) Plaintiffs' Motion *in Limine* to exclude the Website Printouts (DE 113) is **DENIED without prejudice and subject to objection at trial.**

    **DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 17 day of March, 2017.

                                        DONALD M. MIDDLEBROOKS
                                        UNITED STATES DISTRICT JUDGE

Copies to: Counsel of record